**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **WILLIAM WHITE**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**THE VANDERBILT UNIVERSITY**,<br><br>Defendant. | Civil Action No. ____________<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff William White, on behalf of all others similarly situated, hereby files suit against Defendant The Vanderbilt University, ("Vanderbilt," "University," or "Defendant"), and alleges the following based on personal knowledge, information and belief, the investigation of counsel, and public sources:

## NATURE OF THE CASE

1. On November 9, 2026, a cybercriminal group called "BYOD" announced that it had infiltrated Vanderbilt's digital information system, (the "Data Breach"), stating that "[i]f you could not tell already, your databases are locked, We have your entire estate and research data. Over 1 Million SSNs, Full Names, Email Addresses, Phone Numbers, Student & Employee Records, Full takeover of your DC, whatever was on your network, we possess."[1]

---

[1] Ransomware.live, *Vanderbilt EDU*, https://www.ransomware.live/id/VmFuZGVyYmlsdCBFRFVAQllPRA (last visited Nov. 17, 2026); *see also* Dysruptionhub, *Vanderbilt cyber incident prompts Tennessee device shutdowns amid cybersecurity incident*, https://dysruptionhub.com/vanderbilt-tennessee-cyber-device-shutdowns/ (last visited Nov. 17, 2026).

2. That same day, Defendant also publicly posted that it was "currently responding to a cybersecurity incident impacting university devices, systems, and cloud-based services."[2]

3. Vanderbilt has not yet sent individualized notice to its affected students and employees regarding the severity of the Data Breach. Although Vanderbilt originally told students on November 9, 2026 to "shut down university devices, disconnect from university Wi-Fi and remain extremely vigilant," it then directed Data Breach victims to continue using Vanderbilt's still-compromised Wi-Fi, applications, and website only eight days later on November 17, 2026.[3] Vanderbilt had not yet confirmed that the cyberthreat was neutralized at the time it instructed its staff and students to continue using Vanderbilt's digital systems.

4. The Vanderbilt University is one of the most influential universities in the United States, composed of numerous educational, healthcare, and research programs. In administering its educational programs, Vanderbilt has obtained and collected an extraordinary amount of data on tens of thousands of students, as well as applicants seeking to study or work at Vanderbilt who were never ultimately enrolled or employed.

5. As a prominent educational and research institution, Vanderbilt had the resources available to protect its student and employee information, including but not limited to a $12.7 billion endowment.[4]

---

[2] Eli Motycka, *Ransomware Attack Puts Vanderbilt on Lockdown*, Nashville Scene (Nov. 9, 2026), https://www.nashvillescene.com/news/pithinthewind/vanderbilt-university-cyber-attack.lockdown/article_c7136f1f-a103-4e75-93bc-826ca02e894e.html (last visited Nov. 17, 2026).

[3] Vanderbilt University, *Active Cybersecurity Incident Updates*, https://news.vanderbilt.edu/2026/11/09/nov-9-active-cybersecurity-incident-updates/ (last visited Nov. 17, 2026).

[4] The Vanderbilt Hustler, *Vanderbilt endowment grows to $12.7B for fiscal year 2026*, https://vanderbilthustler.com/2026/11/01/vanderbilt-endowment-grows-to-12-7b-for-fiscal-year-2026/ (last visited Nov 17, 2026).

6. The Data Breach victims face serious and substantial social and emotional consequences from their loss of control over their financial information, contact information, Social Security numbers, and other records kept on Vanderbilt systems. Vanderbilt was fully aware of the value and sensitivity of that information, yet failed to adequately protect it.

7. Vanderbilt failed to protect and safeguard Plaintiff and Class Members' Personally Identifiable Information ("PII"). This PII was compromised due to Defendant's negligent or careless acts and omissions. Hackers targeted and obtained Plaintiff's and Class Members' PII because of its value in exploiting and stealing Plaintiff's and Class Members' identities. The current and continuing risk to victims of this breach, including Plaintiff and Class Members, will remain for their lifetimes.

8. Moreover, because the cybercriminals stated that "whatever was on your network, we possess," it is plausible that the Data Breach also included protected health information ("PHI") obtained by the University and held on its systems. This could potentially include health diagnosis information related to housing, working, or testing accommodations that would be included in a student or employment application.[5]

9. Due to this breach and Vanderbilt's failures, Plaintiff and Class Members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for decades to come. Plaintiff and Class Members must now and in the future closely monitor and guard against identity theft at their own expense. Plaintiff and Class Members will accordingly face continuing out-of-pocket expenses, including credit reports, credit monitoring

---

[5] Ransomware.live, *Vanderbilt EDU*, https://www.ransomware.live/id/VmFuZGVyYmlsdCBFRFVAQllPRA (last visited Nov. 17, 2026).

services, credit freezes, or other protective measures to deter, detect, and safeguard against identity theft.

## PARTIES

### A. Plaintiff

10. Plaintiff William White is a former student and independent contractor at Vanderbilt. Plaintiff White is a resident of Arvada, Colorado. Vanderbilt obtained and maintained Plaintiff White's data as part of its educational administration and employment protocol in Tennessee. Plaintiff White's data was accessed and exfiltrated in the breach.

### B. Defendant

11. Defendant Vanderbilt University is a nonprofit corporation organized under the laws of the State of Tennessee, with its headquarters and principal place of business in Nashville, Tennessee 37240.[6] Vanderbilt is a citizen of Tennessee for purposes of 28 U.S.C. § 1332. It is authorized to transact and regularly transacts business in the State of Tennessee.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), there are in excess of 100 Class Members, the action is a class action in which one or more Class members are citizens of states different from Defendant.

13. The Court has personal jurisdiction over Defendant Vanderbilt because Vanderbilt purposefully availed itself of the privilege of conducting activities in Tennessee. These activities

---

[6] Vanderbilt University, *Contact Vanderbilt*, https://www.vanderbilt.edu/about/contact/ (last visited Nov. 17, 2026); Vanderbilt University, *Office of the General Counsel*, https://www.vanderbilt.edu/generalcounsel/legal/faqs/ (last visited Nov. 17, 2026).

included, but were not limited to, conducting higher education courses on its main Nashville campus.[7] Plaintiff's claims arise out of or relate to Vanderbilt's contacts with Tennessee.

14. Venue properly lies in this District pursuant to 28 U.S.C. § 1391 because, *inter alia*, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in, were directed to, and/or emanated from this District; Defendant transacts substantial business and has agents in this District; and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

### A. As a Result of Its Negligence and Carelessness, Vanderbilt Experienced a Data Breach that Exposed the PII of Millions of Students and Employees.

15. Vanderbilt has collected sensitive information for an extensive network of individuals, including its current student population of 13,813.[8] However, according to the cybercriminals responsible for the attack, the PII of over one million individuals has been compromised in this breach, thus implying that past student data was also compromised.[9]

16. On November 9, 2026, Vanderbilt announced that it experienced a massive data breach by the cybercriminal group BYOD.[10] BYOD claims it exfiltrated the PII of more than one

---

[7] *Id.*

[8] Vanderbilt University, *Vanderbilt at a* Glance, https://admissions.vanderbilt.edu/profile/ (last visited Nov. 17, 2026).

[9] Ransomware.live, *Vanderbilt EDU*, https://www.ransomware.live/id/VmFuZGVyYmlsdCBFRFVAQllPRA (last visited Nov. 17, 2026).

[10] Cyber Security News, *Vanderbilt University Shuts Down Campus Devices After BYOD Ransomware Group Claims Network Breach*, https://cybersecuritynews.com/vanderbilt-university-shuts-down-devices/ (last visited Nov. 17, 2026).

million individuals, including "whatever was on [Vanderbilt's] network."[11] The University has not yet commented on or confirmed the total number of affected individuals or categories of information.

17. Accordingly, the breach appears to include the data of at least the following groups:

(1) current and former Vanderbilt students, including minor students; and

(2) current and former Vanderbilt employees.

18. In addition, the Data Breach could have also affected student and employee applicants whose PII and PHI remained on Vanderbilt's system even if they were never accepted, admitted, or employed by Vanderbilt.

19. This data breach did not need to happen. It was caused by Vanderbilt's failure to take reasonable measures to protect the data of its students and employees.

20. Vanderbilt failed to take reasonable measures to protect its current and former students and employees, and this failure caused the Data Breach. As discussed further below, there are many reasonable measures that Vanderbilt should have taken, and failed to take, that would have prevented this breach and the compromise of login credentials.

21. Vanderbilt also failed to take reasonable measures to adequately monitor its own systems. According to the attackers, BYOD was able to access university research data and even control its domain controller.[12] Vanderbilt has neither confirmed nor denied these allegations. If

---

[11] Ransomware.live, *Vanderbilt EDU*, https://www.ransomware.live/id/VmFuZGVyYmlsdCBFRFVAQllPRA (last visited Nov. 17, 2026).

[12] Cyber Security News, *Vanderbilt University Shuts Down Campus Devices After BYOD Ransomware Group Claims Network Breach*, https://cybersecuritynews.com/vanderbilt-university-shuts-down-devices/ (last visited Nov. 17, 2026).

Vanderbilt had employed adequate and reasonable access, intrusion detection, and network monitoring systems and protocols, the Data Breach would have been detected and halted far sooner.

22. The PII that Vanderbilt failed to safeguard and which has been exfiltrated is extensive and sensitive. It includes names, Social Security numbers, contact information, student and employment records, and, according to the hackers, everything else on Vanderbilt's systems. Because the cybercriminals claim that "whatever was on your network, we possess," this disclosed information likely includes detailed demographic information about students, information on race, gender, ethnicity, primary language, country of origin, and English learner status and English language proficiency. The breach could also thus include information obtained from standardized testing materials, as well as data related to a student's eligibility to participate in programs for students with ties to the United States military and programs for impoverished, migrant, abandoned, or homeless youth. And finally, the data released could potentially include information on disabilities and medical conditions, including, but not limited to, data on individuals' mental and physical disabilities, accommodation statuses, and status under Section 504 of U.S. Rehabilitation Act of 1973 ("Section 504"), which pertains in part to persons with certain physical and mental impairments. Accordingly, this stolen data is extremely sensitive.

23. The individuals affected by this breach will face the consequences for years. Data breaches can have extraordinarily serious consequences for their victims because they empower criminals to impersonate the victims and cause financial havoc. Data breaches allow the perpetrators to commit phone or utilities fraud, credit card fraud, or bank fraud, take out loans under victims' identities, commit medical identity theft, collect government benefits under victims' identities, obtain driver's licenses or official identification cards in victims' names but

with the criminals' photos, and file state or federal tax returns as the victim.[13] And PHI is particularly vulnerable: criminals commonly use PHI to commit a wide variety of offenses, including medical fraud. This is in large part why such a large and active cyber black market exists in which criminals exploit PHI on the dark web. Although PII sells for as little as $1-$2 on the black market, PHI sells for as much as $363.[14] Although the hackers did not specifically state they exfiltrated PHI information, this is presumed since the hackers claim they possess "whatever" was on Vanderbilt's network, which could include medical information relevant to testing, housing, or employment accommodation information.[15]

24. The minors and young adults involved in this breach are particularly vulnerable because they may not yet have financial literacy or life experience with handling credit card bills, government benefits, driver licenses, credit scores, and obtaining medical services. A minor's name, date of birth, and home address are foundational to constructing their adult identity. Because minors usually lack credit records, criminals and their enterprises can use data like the information obtained in this breach to open various types of accounts and build fake identities. It may be years before they open their first bank account or credit card or otherwise first learn that criminals exploited their data to impersonate them and create massive complications to their livelihoods.

25. Plaintiff and Class Members have also been, and will continue to be, forced to put significant time and effort to attempt to contain the impact of this breach, including by verifying

---

[13] McAfee, *A Guide to Identity Theft Statistics for 202*6, https://www.mcafee.com/learn/a-guide-to-identity-theft-statistics/ (last visited Oct. 8, 2026).

[14] Center for Internet Security, *Data Breaches: In the Healthcare Sector*, https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited Oct. 18, 2026).

[15] Ransomware.live, *Vanderbilt EDU*, https://www.ransomware.live/id/VmFuZGVyYmlsdCBFRFVAQllPRA (last visited Nov. 17, 2026).

the legitimacy of communications about the data breach, monitoring accounts and credit data, changing account access controls and passwords, and researching the breach itself. Plaintiff and Class Members will be required to do this for years in order to protect against identity theft and fraudulent misuse of the PII (and likely PHI) that Vanderbilt carelessly and negligently left exposed. The data breach also diminished the value of Plaintiff and Class Members' PII and PHI, which are types of intangible property.

26. Plaintiff and Class Members also remain at imminent risk of serious harm from Vanderbilt's inadequate data security practices. Plaintiff and Class Members' PII are at substantial and imminent risk given Vanderbilt's failure to implement reasonable data security practices and procedures. For example, any data pertaining to Plaintiff and Class Members that was not part of this breach could be exposed given Vanderbilt's data security failures. On information and belief, Plaintiff and Class Members continue to have PII and PHI in Vanderbilt's custody and control that are inadequately safeguarded against known dangers and threats.

27. Plaintiff and Class Members have also experienced substantial anxiety, worry, and emotional distress from the breach. Plaintiff and Class Members are afraid given the identity theft and fraud consequences from the breach and because of the continuing uncertainty regarding the breach. Plaintiff and Class Members have also experienced emotional injury from the public release of their medical conditions and diagnoses. Plaintiff and Class Members are also experiencing fear and anxiety given the uncertainty about whether Vanderbilt is continuing to fail to reasonably protect Plaintiff and Class Members' PII.

28. Plaintiff and Class Members have also suffered a serious privacy violation analogous to the injuries associated at common law with intrusion upon seclusion. Intrusion upon seclusion protects against highly offensive intrusions into the private concerns of individuals, like

that which transpired in the breach. Here, Plaintiff and Class Members' PII, and possibly PHI, were stolen in the data breach. The unlawful and unauthorized obtainment, possession of, and access to, Plaintiff and Class Members' private and sensitive interests by members of the public has already occurred.

29. Vanderbilt was fully aware of its duty and obligation to safeguard the PII of Plaintiff and Class Members both before and during the data breach. Despite this, Vanderbilt failed to protect Plaintiff and Class Members' PII. Vanderbilt was also aware that the hacking of the data of Plaintiff and Class Members would result in the injuries to Plaintiff and Class Members alleged in this Complaint.

**B. Vanderbilt Made False Promises to Students and Employees About the Security of Their Data and Obtained Access to Their PII Under False Pretenses.**

30. Vanderbilt obtains the PII of students and employees as a result of its data security promises to the public, including the victims of this data breach and their parents. In fact, Vanderbilt posts an "Online Privacy Notice" on its webpage.[16] This notice touts that Vanderbilt is "committed to protecting individuals' privacy rights while also balancing its legal, policy, and administrative duties in the management of Vanderbilt data," including compliance with the Family Educational Rights and Privacy Act (FERPA).[17]

31. Vanderbilt violated these promises to Plaintiff and Class Members. Given Vanderbilt's failure to employ rudimentary data security practices, technologies, protocols, and procedures that would have prevented this breach or timely detected it, Vanderbilt is not

---

[16] Vanderbilt University, *Vanderbilt University's Online Privacy Notice*, https://www.vanderbilt.edu/about/privacy/ (last visited Nov. 17, 2026).

[17] *Id.*

"committed to protecting individuals' privacy rights." Vanderbilt also does not comply with FERPA.

32. Plaintiff and Class Members had the reasonable expectation that Vanderbilt would comply with its obligations related to their PII. Vanderbilt owed Plaintiff and Class Members a duty to provide reasonable security, consistent with industry standards and requirements, and to ensure that their computer systems, networks, and data security practices, protocols, and procedures adequately protected their PII. The data breach resulted from Vanderbilt's failure to comply with its obligations.

### C. Vanderbilt Failed to Abide by Regulatory Guidance and Implement Industry Standard Cybersecurity Practices and Procedures.

33. Vanderbilt's failure to comply with federal and state laws and requirements and industry standards relating to securing PII is the cause of Vanderbilt's data security failures and the data breach itself.

34. Vanderbilt ignored and failed to abide by the Federal Trade Commission's ("FTC") guidance on industry-standard cybersecurity practices and the safeguarding of data. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to protect PII by organizations like Defendant. According to the FTC, data security needs should be considered in all entity decision-making. FTC publications have repeatedly and emphatically discussed the importance of reasonable data security protocols, systems, and procedures. For example, in 2023, the FTC released *Start with Security: A Guide for Business (Lessons Learned from FTC Cases)*. In this guidance, the FTC advised organizations to, among other things:

(1) "Hold on to information only as long as you have a legitimate business need;"

(2) "Restrict access to sensitive data;"

(3) “Limit administrative access;”

(4) “Use industry-tested and accepted methods [for data security];”

(5) “Continuously validate access to data;” and

(6) “Monitor activity on your network.”[18]

35. The FTC also encourages organizations to take other protective measures, including, but not limited to, ensuring and verifying that any third parties with access to sensitive data or information are using reasonable data security procedures, technologies, and protocols, and requiring enhanced or strong passwords for access to sensitive data or information.

36. The FTC has a record of bringing enforcement cases against organizations that failed to adequately and reasonably protect and store sensitive data. Such failures constitute an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act (“FTC Act”), 15 U.S.C. § 45. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 248 (3d Cir. 2015).

37. States throughout the country also have data security laws requiring businesses that own, maintain, or license PII or PHI to protect PHI and PII from unauthorized access and to implement and employ reasonable data security policies, procedures, and practices.

38. Based upon the known details of the Data Breach and how it occurred, Vanderbilt failed to fully comply with industry-standard cybersecurity measures and practices, including, but not limited to, authentication safeguards; intrusion monitoring, prevention, and detection; secure credential storage and creation; user-activity monitoring; data-loss prevention; access restrictions and monitoring; proper firewall configurations and network segmentation; limited data retention periods; and rate limiting.

---

[18] FTC, *Start with Security: A Guide for Business (Lessons Learned from FTC Cases)*, https://www.ftc.gov/business-guidance/resources/ftc-safeguards-rule-what-your-business-needs-know (last visited Oct. 18, 2026).

## CLASS ALLEGATIONS

39. Plaintiff brings this nationwide class action individually and on behalf of all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Class that Plaintiff seeks to represent is as follows:

> **Class Definition:** All natural persons whose Personally Identifiable Information was compromised as a result of the Data Breach.

40. Excluded from the Class are Defendant, any entity in which the Defendant has a controlling interest, any of the officers or directors of Defendant, the legal representatives, heirs, successors, and assigns of Defendant, and any Judge to whom this case is assigned, and his or her immediate family.

41. The definition of the Class may be further modified or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court. Plaintiff expressly reserves the right to amend or modify the definitions of the proposed Class before the Court determines whether certification is appropriate.

42. **Numerosity and Ascertainability:** Plaintiff does not know the exact size of the Class or the identity of the Class Members because such information is in the exclusive control of Defendant. Nevertheless, based on published reports, the Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court. The names, phone numbers, and addresses of Class Members are identifiable through documents maintained by Defendant.

43. **Commonality and Predominance:** This action involves common questions of law and fact as to all Class Members, which predominate over any question solely affecting individual Class Members. Common questions of law and fact include, but are not limited to, the following:

(1) Whether Vanderbilt engaged in the conduct alleged herein;

(2) Whether Plaintiff and the Class are entitled to damages and equitable relief due to Vanderbilt's conduct;

(3) Whether Vanderbilt had a legal duty to use reasonable security measures to protect Plaintiff and Class Members' PII;

(4) Whether Vanderbilt's failure to implement effective security measures to protect Class Members' PII was negligent;

(5) Whether Plaintiff and Class Members are entitled to injunctive relief; and

(6) Whether Plaintiff and Class Members are entitled to declaratory relief.

44. **Typicality:** Plaintiff's claims are typical of the other Class Members' claims because all Class Members were comparably injured through Vanderbilt's substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other members of the Class that he seeks to represent, and there are no defenses that are unique to Plaintiff. Plaintiff and Class Members' claims and injuries arise from the same facts and are based on the same law.

45. **Adequacy:** Plaintiff is an adequate Class Representative because his interests do not conflict with the interests of other Class Members he seeks to represent; Plaintiff has retained competent counsel that are experienced in complex class action litigation; and Plaintiff intends to vigorously prosecute this action. The interests of Class Members will be fairly and adequately protected by Plaintiff and his counsel.

46. **Superiority:** A class action is superior to other available methods for fair and efficient adjudication of this controversy. No unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by Class Members are relatively small compared to the expense required to individually litigate their claims against Vanderbilt, so, absent

class-wide adjudication, it would be virtually impossible for Class Members to seek individual redress against Vanderbilt's wrongful conduct.

47. Vanderbilt's educational mission depended upon collecting Plaintiff and Class Members' PII because the services it provides require that it use Plaintiff and Class Members' PII.

## CLAIMS OF RELIEF

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

48. Plaintiff incorporates paragraphs 1 through 47 above, as if fully set forth herein.

49. Plaintiff brings this Claim individually and on behalf of the Class.

50. As part of its operations, Vanderbilt solicited, collected, and maintained Plaintiff and Class Members' PII (and likely PHI).

51. Vanderbilt owed Plaintiff and Class Members a common law duty to use reasonable care to avoid causing foreseeable risks of harm to Plaintiff and Class Members when Vanderbilt was collecting, employing, maintaining, storing, and managing PII or PHI.

52. Upon collecting, accepting custody of, and storing Plaintiff and Class Members' PII, Vanderbilt undertook and owed a duty to Plaintiff and Class Members to secure and protect their PII using proven, effective, reliable and safe means and methods.

53. Vanderbilt's duties to Plaintiff and Class Members extended to protecting them from the foreseeable risk of third parties' criminal conduct. Defendant owed a duty of care to Plaintiff and Class members whose PII was entrusted to it. Vanderbilt's duties included, but were not limited to, the following:

(1) taking reasonable care in obtaining, securing, retaining, safeguarding, and deleting PII and PHI in its possession;

(2) protecting PHI and PII using reasonable and adequate security procedures and systems consistent and compliant with industry standards;

(3) having procedures in place to prevent the loss or unauthorized dissemination of PHI or PII in its possession;

(4) employing reasonable and adequate security measures and otherwise safeguarding and protecting the PII and PHI of Plaintiff and Class Members pursuant to federal and state regulations, including, but not limited to, the FTC Act;

(5) implementing processes to expeditiously detect a data breach and acting timely on indicators of compromise or warnings or signs of a data breach; and

(6) promptly notifying Plaintiff and Class Members of the breach, and precisely disclosing the type(s) of information compromised and their scope.

54. Only Vanderbilt was able to secure its own programs and systems and ensure that the security measures it used were sufficient to protect the PII and PHI of Plaintiff and Class Members.

55. Vanderbilt breached its duty of care because it failed to adequately protect and safeguard the PII (and likely PHI) belonging to Plaintiff and Class Members. Vanderbilt's breaches included, but were not limited to:

(1) Failing to use adequate and reasonable security systems and policies for safeguarding the PII it possessed;

(2) Failing to ensure that it did not maintain or keep PII on its systems, servers, and devices for longer than necessary;

(3) Failing to use reasonable care in protecting, maintaining, using, and erasing the PII that it possessed;

(4) Failing to adequately train and test its employees on sufficiently and safely sending and storing PII;

(5) Failing to enforce security policies for protecting Plaintiff and Class Members' PII;

(6) Failing to reasonably implement protocols for promptly detecting security incidents, data breaches, or unauthorized access to sensitive data, including Plaintiff and Class Members' PII;

(7) Failing to train employees to avoid phishing emails and test employees' conduct upon receipt of suspicious emails;

(8) Failing to use reasonable and adequate industry standard security systems and devices for emails, including SPAM filters, DMARC compliance, and/or Sender Policy Framework compliance.

56. Vanderbilt was fully aware that Plaintiff and Class Members' PII was sensitive, that Plaintiff and Class Members would suffer significant and varied injuries if their PII was wrongfully disclosed or exfiltrated, and that providing reasonable and sufficient security for Plaintiff and Class Members' PII was substantially important.

57. Plaintiff and Class Members were foreseeable victims of any insufficient security protocols and practices by Vanderbilt. Defendant had a duty of care to not subject Plaintiff and Class Members to an unreasonable risk of injury. Defendant knew that cybercriminals frequently

use cyberattacks to steal sensitive PII for their own gain and in doing so, cause serious harm to those persons to whom the PHI and PII pertain.

58. Plaintiff and Class Members' PII (and likely PHI) have been publicly exposed as a direct result of Vanderbilt's breach of its duty to use reasonable care to adequately protect and secure Plaintiff and Class Members' PII.

59. Despite knowing its networks, systems, protocols, policies, procedures, and practices, as described above, were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiff and Class Members' PII was secured from unauthorized access, Vanderbilt ignored the inadequacies and was oblivious to the risk of unauthorized access it had created.

60. Vanderbilt's wrongful acts and omissions constituted and continue to constitute common law negligence. And because Vanderbilt's behavior establishes facts evidencing a reckless disregard for Plaintiff and Class Members' rights, Vanderbilt was grossly negligent.

61. Vanderbilt's conduct also constitutes negligence per se. The FTC Act prohibits "unfair practices in or affecting commerce."[19] It imposed and continues to impose on Vanderbilt a duty to Plaintiff and Class Members to provide adequate and fair practices, computer systems, and data security for safeguarding Plaintiff and Class Members' PII and PHI. In enforcement actions, the FTC has treated businesses' failure to employ reasonable measures to adequately secure consumers' confidential data as an unfair act or practice prohibited by Section 5 of the FTC Act.[20]

---

[19] 15 U.S.C. § 45(a).

[20] *See, e.g.*, Complaint, *Drizly, LLC and James Cory Rellas*, FTC Matter No. 2023185 (Oct. 24, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/202-3185-Drizly-Complaint.pdf (last visited Oct. 18, 2026); Complaint, *Fandango*, FTC Matter No. 1323089 (Aug. 19 2014), https://www.ftc.gov/system/files/documents/cases/140819fandangocmpt.pdf (last visited Oct. 18, 2026).

Vanderbilt's failures to use reasonable and appropriate methods to guard Plaintiff and Class Members' PII against unauthorized access are an unfair act or practice that Section 5 of the FTC Act prohibits. Vanderbilt violated the FTC Act by failing to comply with industry-standard data security practices, as described above. Vanderbilt's collection and maintenance of Plaintiff and Class Members' PII were actions central to its business and affected commerce. The class of people that the FTC Act is intended to protect include Plaintiff and Class Members.

62. As a direct and proximate result of Vanderbilt's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the data breach, Plaintiff and Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft and identity fraud – risks justifying expenditures for protective and remedial services for which they are entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of their PII, (iv) statutory damages, (v) deprivation of the value of their PII, for which there is a well-established national and international market, and/or (vi) the financial and temporal cost of monitoring their credit, monitoring financial accounts, and mitigating damages.

63. Vanderbilt's negligence is directly linked to Plaintiff and Class Members' injuries. As a result of Vanderbilt's reckless disregard for Plaintiff and Class Members' rights by failing to secure their PII, despite knowing its networks, systems, protocols, policies, procedures, and practices were not adequately designed, implemented, maintained, monitored, and tested, Plaintiff and Class Members suffered injury, which includes but is not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm, and continue to be at imminent risk of additional injuries as a foreseeable and proximate result of Vanderbilt's

negligence. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff and Class Members' PII (and likely PHI) has also diminished the value of their information.

64. Plaintiff and Class Members are accordingly entitled to damages in an amount to be proven at trial.

## COUNT II
## BREACH OF IMPLIED CONTRACTS

65. Plaintiff incorporates paragraphs 1 through 47 above, as though fully set forth herein.

66. Plaintiff brings this Claim individually and on behalf of the Class.

67. Plaintiff and Class Members provided their PII (and likely PHI) to Vanderbilt to obtain either education or employment by Vanderbilt.

68. By providing their PII, and upon Vanderbilt's acceptance of such information, Plaintiff and Class Members on one hand, and Vanderbilt on the other hand, entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the services provided, whereby Vanderbilt was obligated to take reasonable steps to secure and safeguard that information.

69. Vanderbilt had an implied duty of good faith to ensure that the PII of Plaintiff and Class Members in its possession were only used in accordance with its contractual obligations.

70. Vanderbilt was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff and Class

Members' PII and to comply with industry standards and state laws and regulations for the security of this information, and Vanderbilt expressly assented to these terms in its Privacy Policies.

71. Plaintiff and Class Members performed all conditions, covenants, obligations, and promises owed to Vanderbilt, including paying for the services provided by Vanderbilt and/or providing the PII and PHI required by Vanderbilt.

72. Vanderbilt breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiff and Class Members' PII, resulting in the Data Breach. Vanderbilt unreasonably interfered with the contract benefits owed to Plaintiff and Class Members.

73. Further, on information and belief, Vanderbilt has not yet provided data breach notifications to some affected Class Members who may already be victims of identity fraud or theft, or are at imminent risk of becoming victims of identity theft or fraud, associated with the PII and PHI that they provided to Vanderbilt. These Class Members are unaware of the potential source for the compromise of their PII and PHI.

74. The data breach was a reasonably foreseeable consequence of Vanderbilt's actions in breach of these contracts.

75. As a result of Vanderbilt's conduct, Plaintiff and Class Members did not receive the full benefit of the bargain, and instead received services that were of a diminished value as compared to the secure services they paid for. Plaintiff and Class Members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

76. Neither Plaintiff, nor Class Members, nor any reasonable person would have provided their PII or PHI to Vanderbilt, or consented to the provisioning of their PII or PHI to

Vanderbilt, had Vanderbilt disclosed that its security was inadequate or that it did not adhere to industry-standard security measures.

77. As a result of Vanderbilt's breach, Plaintiff and Class Members have suffered actual damages resulting from theft of their PII and PHI, as well as the loss of control of their PII and PHI, and remain at imminent risk of suffering additional damages in the future.

78. As a result of Vanderbilt's breach, Plaintiff and Class Members have suffered actual damages resulting from their attempt to mitigate the effect of the breach of implied contract and subsequent data breach, including, but not limited to, taking steps to protect themselves from the loss of their PII. As a result, Plaintiff and Class Members have suffered actual identity theft and the inability to control their PII.

79. Accordingly, Plaintiff and Class Members have been injured as a result of Vanderbilt's breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT III
## BREACH OF FIDUCIARY DUTY

80. Plaintiff incorporates paragraphs 1 through 47 above, as though fully set forth herein.

81. Plaintiff brings this Claim individually and on behalf of the Class.

82. Vanderbilt formed a special relationship with Plaintiff and Class Members when it collected, processed and maintained Plaintiff and Class Members' highly sensitive data and in doing so, took on the responsibilities and obligations of safeguarding and protecting that data. Vanderbilt was a fiduciary as to Plaintiff and Class Members because it contracted to collect, process and maintain their data and accepted custody of their data in confidence.

83. Only Vanderbilt could ensure that it adequately and reasonably protected Plaintiff and Class Members' data. Plaintiff and Class Members could not safeguard the information for Vanderbilt once it was within Vanderbilt's custody. Vanderbilt, not Plaintiff and Class Members, exercised control and had dominion over the data systems, technologies, protocols, and procedures that Vanderbilt used to collect, process and maintain Plaintiff and Class Members' data.

84. Accordingly, Vanderbilt had a fiduciary duty to Plaintiff and Class Members to act for their benefit as to matters within the scope of Vanderbilt's relationship with Plaintiff and Class Members. The scope of that relationship included the protection and safeguarding of Plaintiff and Class Members' data.

85. Vanderbilt violated its fiduciary duty because it failed to take reasonable and adequate measures to protect Plaintiff and Class Members' data.

86. As a proximate and direct consequence of Vanderbilt's violation of its fiduciary duty to Plaintiff and Class Members, Plaintiff and Class Members experienced, and will continue to experience, the injuries described in paragraphs 1 through 47 of this Complaint and are entitled to compensatory and consequential damages in an amount to be established at trial.

## COUNT IV
## UNJUST ENRICHMENT

87. Plaintiff incorporates paragraphs 1 through 47 above, as though fully set forth herein.

88. Plaintiff brings this Claim individually and on behalf of the Class.

89. Plaintiff and Class Members conferred a monetary benefit on Vanderbilt in the form of both labor by Vanderbilt employees and tuition payments by students.

90. Vanderbilt collected, maintained, and stored the PII (and likely PHI) of Plaintiff and Class Members and, as such, Vanderbilt had knowledge of the monetary benefits conferred by

Plaintiff and Class Members. The collection, maintenance, and storage of Plaintiff and Class Members' PII was a necessary part of Vanderbilt's operations and services to students and employees.

91. The money that Vanderbilt directly or indirectly received from Plaintiff and Class Members should have been used to pay, at least in part, for the administrative costs and implementation of data management and security. Vanderbilt failed to implement—or adequately implement—practices, procedures, and programs to secure sensitive PII, as evidenced by the data breach.

92. As a result of Vanderbilt's failure to implement security practices, procedures, and programs to secure sensitive PII, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiff and Class Members paid for, and the services they received without reasonable data privacy.

93. Under principles of equity and good conscience, Vanderbilt should not be permitted to retain money belonging to Plaintiff and Class Members because Vanderbilt failed to implement the data management and security measures that are mandated by industry standards and that Plaintiff and Class Members paid for, either directly or indirectly.

94. Vanderbilt should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Class all unlawful or inequitable proceeds received by Vanderbilt. A constructive trust should be imposed upon all unlawful and inequitable sums received by Vanderbilt traceable to Plaintiff and Class Members.

**COUNT V**
**DECLARATORY JUDGMENT**

95. Plaintiff incorporates paragraphs 1 through 47 above, as though fully set forth herein.

96. Plaintiff brings this Count individually and on behalf of the Class.

97. Plaintiff and Class Members have stated claims against Defendant based on negligence, breach of implied contracts, breach of fiduciary duty, and unjust enrichment.

98. Defendant failed to fulfill its obligations to provide adequate and reasonable security measures for the PII (and likely PHI) of Plaintiff and Class Members, as evidenced by the data breach.

99. As a result of the data breach, Vanderbilt's systems are more vulnerable to unauthorized access and require more stringent measures to be taken to safeguard the PII of Plaintiff and Class Members going forward.

100. Plaintiff seeks a declaration that Vanderbilt must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII of Plaintiff and Class Members. Specifically, Plaintiff and Class Members seek a declaration that Vanderbilt's existing security measures do not comply with its obligations, and that Vanderbilt must implement and maintain reasonable security measures on behalf of Plaintiff and Class Members to comply with their data security obligations.

## **PRAYER FOR RELIEF**

101. Plaintiff, individually and on behalf of the proposed Class, requests that the Court:

(1) Certify this case as a class action, appoint Plaintiff as class representative, and appoint Plaintiff's Counsel as Class Counsel for Plaintiff to represent the Class.

(2) Find that Defendant breached its duties to safeguard and protect the PII of

Plaintiff and Class Members that was compromised in the data breach;

(3) Award Plaintiff and Class Members appropriate relief, including actual and statutory damages, restitution and disgorgement;

(4) Award equitable, injunctive and declaratory relief as may be appropriate;

(5) Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

(6) Award pre-judgment and post-judgment interest as prescribed by law; and

(7) Grant additional legal or equitable relief as the Court may find just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 19, 2026

Respectfully submitted,

/s/ *Alexandra M. Honeycutt*
Alexandra M. Honeycutt (Bar No. 039617)
**MILBERG, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: (865) 247-0080
E: ahoneycutt@milberg.com

Karin B. Swope*
Kelly Aristedes
**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, Washington 98101
T: (206) 802-1272
E: kswope@cpmlegal.com

Francis Bottini*
**Bottini & Bottini, Inc.**
7817 Ivanhoe Avenue
Suite 102
La Jolla, CA 92037

T: (858) 914-2001
F: (858) 914-2002
E: fbottini@bottinilaw.com

**Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff and the Proposed Class*